IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:08-cr-00023-2 |
| v. | ) | |
| | ) | Judge Nixon |
| FRANKLIN GUZMAN | ) | |

## ORDER

Pending before the Court is Defendant Franklin Guzman's Motion to Dismiss the Indictment Due to Deliberate Government Action Compromising Mr. Guzman's Right to Due Process of Law ("Motion"). (Doc. No. 403.) The United States of America ("Government") filed a Response to Mr. Guzman's Motion to Dismiss (Doc. No. 419), to which Mr. Guzman filed a Reply (Doc. No. 424), to which the Government then filed a Sur-Reply. (Doc. No. 426.) Also pending is Mr. Guzman's Motion Requesting Evidentiary Hearing on Motion to Dismiss ("Motion for Hearing"). (Doc. No. 431.)

For the reasons set forth below, the Motion is **DENIED** and Motion for Hearing is **TERMINATED AS MOOT**.

I.  **BACKGROUND**

Mr. Guzman was arrested and indicted in this case on January 30, 2008. (Doc. No. 1.) The Government initially charged him, along with Co-Defendants Oscar Toledo and Jose Clariot, with (1) conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, and (2) possession with intent to distribute five or more kilograms of cocaine, both occurring on or about January 30, 2008. (*Id.*) The Government also alleged a forfeiture

1

allegation against all three Defendants. (*Id.* at 3.) Mr. Guzman posted a $50,000 cash bond and was released from pretrial detention on February 8, 2008. (Doc. No. 41.)

Mr. Toledo and his attorneys met with attorneys for the Government on July 11 and 12, 2012, and the Government alleges that these meetings were conducted in accordance with Rule 11 of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence. (Doc. No. 419 at 3.) On July 17, 2012, Mr. Guzman filed a motion to continue the August 1, 2012, trial date. (Doc. No. 263.) In his motion, Mr. Guzman's counsel stated that the Government had informed her of its plan to dismiss the charges in this case against Co-Defendant Oscar Toledo and call Mr. Toledo as a witness against Mr. Guzman. (*Id.* at 1.) Counsel requested a continuance based on her understanding that the Government intended to file a superseding indictment against Mr. Guzman in advance of the August 1 trial date. (*Id.* at 2.) The Court granted Mr. Guzman's motion and continued the trial to January 15, 2013 (Doc. No. 266), and subsequently to April 9, 2013 (Doc. No. 280), after Mr. Guzman filed another motion to continue based on the unavailability of an expert witness (Doc. No. 274). Mr. Toledo's case was dismissed with prejudice on July 18, 2012. (Doc No. 265.)

On January 23, 2013, the Government filed a Superseding Indictment against Mr. Guzman, adding no new charges, but modifying Count One of the Original Indictment to enlarge the time frame of the alleged conspiracy, alleging that it occurred between April 2007 and January 30, 2008. (Doc. No. 284 at 1.) Mr. Guzman's counsel states that on September 16, 2013, the Government informed Mr. Guzman that Jose Clariot had proffered with the Government and would testify against Mr. Guzman. (Doc. No. 403 at 7.) Counsel further states that the Government "indicated that it no longer believed Mr. Toledo was truthful, but that Mr. Clariot was

2

the one telling the truth." (*Id.*) Mr. Clariot entered a guilty plea on October 2, 2013. (Doc. Nos. 395–97.) Prior to Mr. Clariot's entering a plea of guilty, following Mr. Clariot's proffer meeting with the Government, Mr. Toledo's counsel informed Mr. Guzman's counsel that the Government had informed her that it doubted the truthfulness of Mr. Toledo's prior statements. (Doc. No. 403-3 at 2.) Based on this turn of events, Mr. Toledo's counsel told Mr. Guzman's counsel that, if called to testify at Mr. Guzman's trial, Mr. Toledo will invoke his Fifth Amendment right to silence. (*Id.*)

Mr. Guzman filed the instant Motion on October 3, 2013 (Doc. No. 403), to which the Government filed a Response on October 17, 2013 (Doc. No. 419). Mr. Guzman filed a Reply on October 22, 2013 (Doc. No. 424), to which the Government filed a Sur-Reply on October 23, 2013 (Doc. No. 426). The parties presented oral arguments on the Motion on October 25, 2013. (*See* Doc. No. 430.)

## II. ANALYSIS

Defendant moves this Court to dismiss the Superseding Indictment (Doc. No. 284) based on alleged violations of Mr. Guzman's constitutional rights to (1) due process and (2) compulsory process. The Court addresses each of these arguments in turn.

### A. Due Process Argument

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the Government is required to disclose to a criminal defendant, upon request, any evidence in its possession that is material and favorable to his defense. The Government violates a Defendant's due process rights when it destroys material, exculpatory evidence. *See California v. Trombetta*, 467 U.S. 479, 486–89 (1984). Evidence is material when there is a "reasonable probability that, had the evidence been disclosed to the

3

defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Additionally, for evidence to be material, its exculpatory significance must be both "apparent before" destruction, and the defendant must be unable to "obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489. "The destruction of material[,] exculpatory evidence violates [a defendant's] due process [rights] regardless of whether the government acted in bad faith." *Unites States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001).

However, when the analysis centers on "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," the defendant must make a showing of bad faith on the part of the Government to prove a due process violation. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). In other words, if the exculpatory value of the evidence is not apparent, but only "potentially useful" for the defense, then the defendant must show that the Government acted in bad faith in destroying the evidence. *Id.* The Supreme Court specifically stated that the presence or absence of bad faith by the police, for purposes of the Due Process Clause, "must necessarily turn on the police's *knowledge* of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n.* (emphasis added). Gross negligence alone does not amount to bad faith. *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996).

Here, Mr. Guzman first argues that the Government acted in bad faith by electing not to record its two-day interview with Mr. Toledo, the substance of which contained "potentially material, exculpatory" facts. (Doc. No. 403 at 13.) While Mr. Guzman at first calls the information from the interview "potentially" material and exculpatory (*id.*), he later states that Mr.

4

Toledo's testimony "is both constitutionally material and exculpatory in nature" and thus argues "the good or bad faith of the [government is] irrelevant to the analysis." (*Id.* (quoting *U.S. v. Cody*, 498 F.3d 582, 589 (6th Cir. 2007) (internal quotation marks).)

Mr. Guzman argues that Mr. Toledo's statements are material because he "provides a logical explanation for all of the cross-country flights now alleged as part of the conspiracy" and that his statement to the Government "directly contradicts the testimony of Mr. Clariot and corroborates Mr. Guman's assertion of innocence." (Doc. No. 403 at 14.) Mr. Guzman argues that this evidence is exculpatory because the government "deliberately elected not to generate a record of" the meeting with Mr. Toledo. (*Id.* at 15.) Mr. Guzman concludes that he is "unable to obtain comparable evidence by other reasonably available means" under *Trombetta*, because "[w]ithout access to the missing record memorializing Mr. Toledo's interview, Guzman cannot introduce all of the exculpatory information that Mr. Toledo provided the government." (Doc. No. 403 at 15.) DEA Agent Adrian Breedlove, the only witness to the settlement conference, does not remember the details of the conference. (Doc. No. 403 at 5.) Mr. Guzman argues that the only appropriate remedy is to dismiss the indictment because, in the absence of a report of the interview, the defense is impaired as it cannot (1) call Agent Breedlove to testify about the contents of the interviewor (2) impeach Mr. Clariot with Mr. Toledo's interview statements. (*Id.* at 16–17.)

The Court finds Mr. Guzman's argument concerning the exculpatory value of Mr. Toledo's interview statements unpersuasive. As an initial matter, Mr. Guzman fails to demonstrate—even had the government generated a "report" of Mr. Toledo's meeting—under what authority prior unsworn, out-of-court statements by Mr. Toledo could be offered at trial

5

either (1) for their truth or (2) to impeach Mr. Clariot. The Federal Rules of Evidence prohibit the introduction of hearsay statements as evidence at trial. Fed. R. Evid. 802. There are exceptions under Federal Rule of Evidence 804(a)(1) where a declarant is deemed "unavailable" as a witness because of a ruling by the court that a privilege applies, such as when the court accepts a witness' invocation of his Fifth Amendment right to silence. *See United States v. Salerno*, 505 U.S. 317, 321 (1992). However, Mr. Toledo has not as of yet been called to testify and invoked this privilege, and cannot yet be deemed unavailable.

Furthermore, even were the Court to allow Mr. Toledo to invoke this privilege, Mr. Toledo's prior statements at a meeting with the Government are not admissible under any of the exceptions provided for in Rule 804(b), which include prior testimony, statements under the belief of imminent death, statements against interest, statements of personal or family history, or statements offered against a party that wrongfully caused declarant's unavailability. The evidence also does not have equivalent guarantees of trustworthiness under Rule 807(a)(1). While the Sixth Circuit did find in *United States v. Tavera* that the prosecution's failure to turn over material and exculpatory statements of a co-defendant was a *Brady* violation requiring reversal of the defendant's conviction, the co-defendant in that case later contradicted such statements in a plea agreement, leading the court to conclude the statements could have been used to impeach the co-defendant's testimony at trial, and bolster defendant's own testimony. *See* 719 F.3d 705, 713 (6th Cir. 2013).

Additionally, the Court finds Mr. Guzman has failed to demonstrate an inability to obtain "comparable evidence by reasonably available means" under *Trombetta*. *See* 467 U.S. at 489. Indeed, AUSA Hannafan provided Mr. Guzman with a letter summarizing Mr. Hannafan's

recollection of the meeting with Mr. Toledo. (Doc. No. 403-2.) Mr. Guzman has made no showing that this letter is of lesser evidentiary value than a contemporaneous "report" of the meeting in light of the above-mentioned hearsay limitations. Mr. Guzman does claim that Mr. Toledo revealed to the Government that he was in possession of a "token" U.S. Marshal badge. (Doc. No. 424 at 3.) However, Mr. Hannafan has responded that he does not remember any such revelation. (Doc. No. 426 at 3.) Mr. Guzman argues that evidence of Mr. Toledo's possession of a token badge is exculpatory "because whatever Mr. Toledo's explanation for possessing the fake law enforcement badge, the government found that explanation lawful and reasonable as evidenced by the government's subsequent dismissal of Mr. Toledo's case." (Doc. No. 424 at 3 n.3.) However, Mr. Guzman has put forward no argument as to why statements concerning a law enforcement badge belonging to Mr. Toledo are material or exculpatory with respect to Mr. Guzman's charges, other than stating "Mr. Guzman wonders what else the government attorneys or agents do not remember that is of a material, relevant or exculpatory nature." (*Id.*)

The Court also rejects Mr. Guzman's argument that the Government is required, under *Brady*, to record interviews with defendants at settlement conferences. Even if the information Mr. Guzman seeks is potentially exculpatory, Mr. Guzman has not demonstrated that the Government's failure to make a contemporaneous record of the meeting was in bad faith as required by *Trombetta*. 467 U.S. at 488 (finding no due process violation where "[t]he record contains no allegation of official animus towards [the criminal defendant] or of a conscious effort to suppress exculpatory evidence"). The prosecution's failure to preserve evidence does not amount to a violation where it is done "in good faith and in accord with their normal practice." *Id.*; *see also Killian v. United States*, 368 U.S. 231, 242 (1961). The Government states that its

meeting with Mr. Toledo was conducted under Rule 11 of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Criminal Procedure. (Doc. No. 419 at 3.) The Government also stated at the hearing on the Motion that it is office practice *not* to record settlement meetings with defendants under these rules. (Doc. No. 430.) As such, Mr. Guzman has presented insufficient evidence to make out a claim that (1) a contemporaneous record of Mr. Toledo's statements at his meeting with the Government would be material and exculpatory or (2) that the Government acted in bad faith in neglecting to make such a contemporaneous record.

### B. *Compulsory Process Argument*

Mr. Guzman argues that the Government has denied him of his right to compulsory process by rendering him unable to call Mr. Toledo as a witness because the Government's "credibility decision about Toledo carries an implied threat of prosecution." (CITE.) Mr. Guzman cites as authority *United States v. Damra*, 621 F.3d 474 (6th Cir. 2010), a case in which the Government deported a defense witness. The test prescribed by the court in *Damra* for finding a violation of compulsory process in the context of a deported witness involves (1) an initial showing that the government acted in bad faith and (2) some plausible showing that the testimony of the deported witness would have been material and favorable. 621 F.3d at 490. However, the court in *Damra* ruled that even where the Government deported a defense witness after stating that the witness would be present notwithstanding his immigration status, there was insufficient evidence to conclude that it acted in bad faith. *Id.*

Here, as stated above, the Government reports that it is general office practice not to record settlement conferences under Rule 410 of the Federal Rules of Evidence and Rule 11 of the Federal Rules of Criminal Procedure. Additionally, the Government has provided Mr. Guzman

8

with a summary of its meeting with Mr. Toledo. While Mr. Guzman argues that the Government "has orchestrated a situation where Mr. Toledo was forced into invoking his Fifth Amendment privilege due to an implied threat of prosecution veiled in the suggestion that he had been untruthful" (Doc. No. 403 at 21), Mr. Guzman provides no evidence to support the assertion that this was a calculated and nefarious move by the Government, rather than a decision made after weighing the credibility of its potential witnesses. For these reasons, the Court finds that there is insufficient evidence to conclude that the Government acted in bad faith and thus, Mr. Guzman has failed to make out the first element of a compulsory process violation claim.

### III. CONCLUSION

After review, and for the reasons set forth above, this Court hereby **DENIES** Mr. Guzman's Motion to Dismiss. Accordingly, Mr. Guzman's Motion for Hearing is **TERMINATED AS MOOT**.

It is so ORDERED.

Entered this the 7 day of November, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT